CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
APR 16 2012
JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| LORI A. BELTON, | ) | CASE NO. 4:11CV00021 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | By: B. Waugh Crigler |
| Defendant. | ) | U. S. Magistrate Judge |

This challenge to a final decision of the Commissioner which denied plaintiff's July 18, 2008 protectively-filed applications for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") under the Social Security Act ("Act"), as amended, 42 U.S.C. §§ 416, 423, and 1381 et seq., is before this court under authority of 28 U.S.C. § 636(b)(1)(B) to render to the presiding District Judge a report setting forth appropriate findings, conclusions, and recommendations for the disposition of the case.[1] The questions presented are whether the Commissioner's final decision is supported by substantial evidence, or whether there is good cause to remand for further proceedings. 42 U.S.C. § 405(g). For the reasons that follow, the undersigned will RECOMMEND that an Order enter GRANTING the Commissioner's motion for summary judgment, AFFIRMING the Commissioner's final decision, and DISMISSING this action from the docket of the court.

In a decision dated July 2, 2010, an Administrative Law Judge ("Law Judge") found that plaintiff had not engaged in substantial gainful activity since July 18, 2008, her date of application for supplemental security income benefits. (R. 13.) The Law Judge determined

---

[1] At her hearing on April 21, 2010, plaintiff withdrew her Title II claim for a period of disability and DIB and amended her alleged onset date of disability to July 18, 2008, the protective filing date of her applications. (R. 11, 31.)

1

plaintiff's respiratory disorders and affective disorder are severe impairments. (R. 14.) He also concluded that plaintiff does not suffer an impairment or combination of impairments which meets or equals a listed impairment. (R. 16-19.) Further, the Law Judge found that she maintains the residual functional capacity ("RFC") to perform light work, with several limitations tied to specific impairments.[2] (R. 19-21.) In reaching his conclusions about plaintiff's RFC, the Law Judge found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the Law Judge found plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms not credible.[3] (R. 17-20.)

The Law Judge further relied on portions of the testimony of Gerald K. Wells, Ph.D., a vocational expert ("VE"). (R. 47-56.) Based on this testimony, the Law Judge determined that plaintiff could perform her past relevant work as a cashier, and that alternate gainful employment was available to her, namely as an order clerk, appointment clerk, and file clerk. (R. 21-23.) Accordingly, the Law Judge found plaintiff was not disabled under the Act. (R. 23.)

Plaintiff appealed the Law Judge's July 2, 2010 decision to the Appeals Council. (R. 1-3.) In a decision issued on April 26, 2011, the Appeals Council found no reason under the rules to review the decision, denied review, and adopted the Law Judge's decision as the final decision of the Commissioner. (R. 1.) In doing so, the Appeals Council considered the reasons submitted

---

[2] The Law Judge found that plaintiff could only occasionally climb, stoop, kneel, crouch, or crawl and should avoid concentrated exposure to wetness, humidity, and irritants such as fumes, odors, dusts, and gases. Further, the Law Judge indicated that plaintiff was restricted to simple, repetitive tasks in a low stress work environment that do not require good ability to maintain attention/concentration for extended periods or frequent interaction with others. (R. 19.)

[3] The Law Judge specifically cited the limited treatment, relatively benign physical and mental examinations, minimal objective medical findings of significant abnormality, and daily activities as supporting evidence. (R. 19-20.)

2

Case 4:11-cv-00021-JLK-BWC   Document 22   Filed 04/16/12   Page 2 of 12   Pageid#: 807

by plaintiff to object to the Law Judge's decision but found this information did not provide a basis for changing it. (R. 2.) This action ensued and briefs were filed.

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs, and medical findings to determine the functional capacity of the claimant. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Shively v. Heckler*, 739 F.2d 987 (4th Cir. 1984). The regulations grant some latitude to the Commissioner in resolving conflicts or inconsistencies in the evidence which the court is to review for clear error or lack of substantial evidentiary support. *Craig v. Chater*, 76 F.3d 585, 589-590 (4th Cir. 1996). In all, if the Commissioner's resolution of the conflicts in the evidence is supported by substantial evidence, the court is to affirm the Commissioner's final decision. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence is defined as evidence, "which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id.* When the Appeals Council considers additional evidence offered for the first time on administrative appeal and denies review, courts must consider the record as a whole, including the new evidence, in determining whether the Law Judge's decision is supported by substantial evidence. *Meyers v. Astrue*, 662 F.3d 700, 707 (4th Cir. 2011); *Wilkins v. Secretary*, 953 F.2d 93, 96 (4th Cir. 1991).

In a brief filed in support of her complaint, plaintiff contends that the Commissioner erred in several respects in reaching his finding that plaintiff was not disabled. First, plaintiff argues the Commissioner's finding that plaintiff's severe pulmonary insufficiency does not meet the criteria of a listed impairment is not supported by substantial evidence. (Dkt. No. 14, at 30.) Plaintiff offers that, given her diagnosed chronic obstructive pulmonary disease/restrictive

ventilatory disease, height[4], and one-second forced expiratory volume ("$FEV_1$") and forced vital capacity ("FVC") results on her pulmonary function tests,[5] she is disabled under Listing § 3.02, Tables I and II.[6] *Id.* at 30-34. Plaintiff asserts that these tests were conducted by pulmonary specialists who followed the requirements for accurate testing. (Dkt. No. 21, at 4-5.) Additionally, she asserts that, even if assumed for the sake of argument that the Commissioner is correct about plaintiff's height, and that only the test results acquired after bronchodilation are relevant, the test results taken under these parameters and stable conditions still show that plaintiff meets or equals the requirements of Listing § 3.02. *Id.* at 6-7.

Second, plaintiff argues that the Law Judge erred by disregarding the opinion of plaintiff's treating pulmonologist, Jonathan M. Lenzen, M.D. (Dkt. No. 14, at 34.) She points out that as a treating physician, Dr. Lenzen's findings relating to the severity of plaintiff's impairments should be accorded controlling weight if they are well supported by medically accepted techniques and are not inconsistent with other substantial evidence in the record. *Id.* She offers that Dr. Lenzen's group has been treating plaintiff since 2003, and, unlike the consulting examiners, he has personally treated and examined the plaintiff for years. *Id.* Plaintiff also asserts that Dr. Lenzen's opinion is supported by the record, citing her numerous hospitalizations, many prescribed medications, and spirometry tests. *Id.* at 34-35. Therefore, plaintiff contends that Dr. Lenzen's opinion should have been given greater weight.

---

[4] Plaintiff offers that she is 63.5 inches tall, and she contends that it should be rounded up rather than down in determining whether she has an impairment or combination of impairments that meet or equal a listed impairment. (Dkt. No. 21, FN 1, at 1.)

[5] Plaintiff's counsel incorrectly stated in his brief and before the Law Judge what values of $FEV_1$ and FVC were necessary to meet the requirements of Listing § 3.02 at plaintiff's height. (Dkt. No. 14, at 32; R. 55.) Plaintiff's Response to Defendant's Motion for Summary Judgment corrects this mistake. (Dkt. No. 21.)

[6] *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1

4

Finally, plaintiff argues that the Law Judge erred by failing to include all of plaintiff's limitations in his RFC finding. (Dkt. No. 14, at 35.) She contends that the Law Judge did not consider her obesity in his RFC finding. *Id.* She also offers that, despite clear medical evidence in the record establishing what elements exacerbated her asthma attacks, the Law Judge's RFC finding placed no restrictions on plaintiff's exposure to pollen, exposure to cleaning solvents, or on activity such as walking or standing. *Id.* Further, plaintiff asserts that "evidence abounds" in the record that she needs to use a nebulizer several times a day and has a history of numerous medical appointments and hospitalizations when suffering an exacerbation of her asthma. She contends that, despite this evidence, the Law Judge made no mention of plaintiff's need for breaks to use her nebulizer or time off from work for medical treatments in his RFC finding. *Id.* at 35-36. This point is critical, according to plaintiff, for when these limitations were considered by the VE during the hearing, he found no jobs available. *Id.* at 36; (R. 53-54.) Accordingly, plaintiff asks that the Commissioner's decision be reversed and that plaintiff is found entitled to supplemental security income ("SSI"), or the case is remanded to the Law Judge for further consideration.

In a brief filed in support of his motion for summary judgment and in oral argument before the undersigned, the Commissioner contends that plaintiff is not disabled within the meaning of the Act, and that there is substantial evidence to support the Law Judge's decision. First, he contends that plaintiff's impairments do not meet a listed pulmonary impairment. (Dkt. No. 20, at 12.) Addressing plaintiff's pulmonary test results in turn, he cites plaintiff's height, the fact that plaintiff did not alternatively test or consider her $FEV_1$ and FVC after bronchodilation as is required by the Listing, and the fact that some of plaintiff's test results were taken when she was not clinically stable, as evidence that plaintiff does not meet Listing § 3.02.

5

*Id.* at 12-15. Further, he asserts that test results, alone, do not support a claim of disability under the respiratory listings, because the regulations require consideration of plaintiff's complete medical history, physical examination, chest x-ray or other appropriate imaging techniques, and spirometric pulmonary function tests. *Id.* at 15-16. The Commissioner contends that based on the evidence of record in these categories, there is no merit to plaintiff's claim that she meets Listing § 3.02. *Id.*

Second, the Commissioner argues that the Law Judge complied with the regulations when assessing the weight to be given the opinion of Dr. Lenzen, a treating source. (Dkt. No. 20, at 17.) He disputes the efficacy of plaintiff's supporting evidence and asserts that her hospitalizations were few and far between, and those occurring before her SSI application date are not germane to her claim. *Id.* The Commissioner also asserts that, because the record shows prescribed medications improved her condition so as to render it non-disabling, there is substantial evidence to support a finding that plaintiff was not entitled to benefits. *Id.* at 18. Further, he contends that the Law Judge provided valid reasons to support his finding, citing medical evidence and evidence of her daily activities which he believes was was inconsistent with Dr. Lenzen's opinion. *Id.* Accordingly, the Commissioner contends that the Law Judge's finding is entitled to deference.

Finally, the Commissioner asserts that the RFC described to the VE during the Law Judge's examination is supported by substantial evidence. (Dkt. No. 20, at 19.) He offers that the Law Judge specifically considered plaintiff's obesity in determining that she was able to perform the standing or walking required for light work. *Id.* He also asserts that the Law Judge addressed plaintiff's environmental limitations, including the need to avoid exposure to fumes, odors, dust, gases, or ventilation, and suggests these limitations were broad enough to include

6

exposure to pollen and other environmental irritants. *Id.*; (R. 49.) Additionally, the Commissioner argues that the Law Judge was not required to include the need for plaintiff to take frequent breaks to use a nebulizer, as there was evidence showing that plaintiff used a portable inhaler during the day as needed. *Id.* at 20. Accordingly, the Commissioner concludes that its final decision is supported by substantial evidence and should be affirmed.

Taking plaintiff's arguments in order, the first question is whether plaintiff proved her impairments met or equaled a listed impairment, specifically Listing § 3.02A or B, Chronic Pulmonary Insufficiency. 20 C.F.R. Pt. 404, Subpt. P, App. 1. Plaintiff's height without shoes is essential to this determination, and the record oddly conflicts on this point. On different occasions, plaintiff is described as being 63,[7] 63.5,[8] and 64 inches tall.[9] Plaintiff testified that she was 63.5 inches and 63 inches tall. (R. 33, 54-55.) The Law Judge resolved the conflict by finding that plaintiff is 63 inches tall. (R. 19.) The Commissioner is granted discretion in resolving inconsistencies in the record, and that resolution here is supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589-590 (4th Cir. 1996).

In order to meet or equal a listed impairment, plaintiff must satisfy all medical criteria specified under that listing. *See Sullivan v. Zebley*, 493 U.S. 521, 531 (1990).
At plaintiff's height, Table I under Listing § 3.02A requires that plaintiff suffer chronic obstructive pulmonary disease, due to any cause, with the $FEV_1$ equal to or less than 1.15. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 3.02A. Table II under Listing § 3.02 B requires that plaintiff have chronic restrictive ventilatory disease, due to any cause, with the FVC equal to or less than 1.35. *Id.* at § 3.02B. Listing § 3.00E sets numerous specific requirements for spirometry testing. Specifically, it requires that post-bronchodilator testing be performed under certain

---

[7] (R. 54-55, 168, 239, 272, 275, 277, 389, 466, 537, etc.)
[8] (R. 33, 259, etc.)
[9] (R. 371, 527, 563, etc.)

7

circumstances, and that testing generally be performed only while the patient is clinically stable. *Id.* at § 3.00E. While a bit ambiguous on whether pre-bronchodilator or post-bronchodilator test results are to be given primary importance, the regulations do state clearly, "The highest values of the $FEV_1$ and FVC, whether from the same or different tracings, should be used to assess the severity of the respiratory impairment."[10] *Id.* Further, decisional authority in the Fourth Circuit suggests that post-bronchodilator results should be considered, as they demonstrate how well a claimant responds to medication and the degree to which the impairment is reversible.[11]

In this case, there are dozens of spirometry test results spanning several years. The vast majority of these test results do not demonstrate $FEV_1$ or FVC values equal to or less than those specified in Tables I and II.[12] Of the results that meet the requirements, many fail to include post-bronchodilator testing, despite the regulatory requirement,[13] while in others, the post bronchodilator test results do not meet the requirements of Tables I or II, but rather demonstrate a high degree of reversibility in her condition.[14] It appears that there were only two occasions when plaintiff's pre and post-bronchodilator test results met the requirements for a listed

---

[10] Further, the regulations indicate, "Pulmonary function studies performed to assess airflow obstruction without testing after bronchodilators cannot be used to assess levels of impairment in the range that prevents any gainful work activity, unless the use of bronchodilators is contraindicated." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 3.00E. In the listing of children's respiratory problems, the regulations also state, "Pulmonary function studies performed to assess airflow obstruction without testing after bronchodilators cannot be used to assess levels of impairment in the range that prevents a child from performing age-appropriate activities, unless the use of bronchodilators is contraindicated." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 103.00B. These statements support the importance of post-bronchodilator spirometry test results in determining the degree of impairment.

[11] *See generally Sea "B" Mining Co. v. Dunford*, 188 Fed.Appx. 191 (4th Cir. June 27, 2006); *Allen v. Director, Office of Workers' Compensation Programs, U.S. Dept. of Labor*, 1995 WL 649877 (4th Cir. November 6, 2005).

[12] (R. 285, 353, 370, 441, 443, 445, 446, 448, 449, 471, 492, 530, 543, 545, 548, 553, 555, 557, 563, 565, 568, 577, 579, 582, 635, 665, 674, 680, 681, 684, etc.)

[13] The regulations require that post-bronchodilator testing be performed when the $FEV_1$ value is less than 70 percent of the predicted normal value. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 3.00E.

[14] (R. 279, 444, 479, 573, 668, 669, 675, etc.)

8

impairment.[15] On both occasions, plaintiff was suffering an exacerbation in her condition, reflecting that she was not at her most stable state of health, thus rendering the test results unreliable for determining whether she meets the requirements of the Listing. (R. 570, 634.) Further, the regulations clearly state that it is the *highest* values of $FEV_1$ or FVC that determine the severity of the respiratory impairment. Accordingly, there is substantial evidence in support of the Law Judge's finding that the record does not establish $FEV_1$ or FVC values equal to or less than the values specified in Tables 1 and 2 of Listing § 3.02.

The Law Judge gave no significant weight to Dr. Lenzen's opinion, instead finding it lacked support and was inconsistent with other evidence of record, including Dr. Lenzen's own treatment notes. (R. 21.) The Law Judge also pointed out that Lenzen's conclusion that plaintiff was totally disabled was a matter that is reserved to the Commissioner and cannot be accorded special weight or consideration. *Id.*

There are conflicts between Lenzen's opinion and his treatment notes. The severity of plaintiff's condition varied over the course of her treatment, and Lenzen's COPD diagnoses ranged from moderate to moderately severe, each the product of mixed asthma and emphysema. (R. 462, 464, 467, 544, 547, 634, 637, 665-686.) He consistently found plaintiff's oxygen saturation to be 98% or higher and her respiratory rate to be between 16 and 20 breaths per minute. *Id.* Further, Lenzen reflected that plaintiff's chest examinations, "Demonstrate[s] normal inspection and normal symmetry with a good effort. The percussion is normal. There are a few scattered wheezes bilaterally without crackles, rhonchi, or other adventitious or consolidated findings." (R. 673.) He also frequently noted the absence of any wheezing. (R. 634, 637, 665, 667, 677. 679, 683.) Moreover, though plaintiff's spirometry varied in severity, Lenzen consistently noted good improvement post-bronchodilation.

---

[15] (R. 569, 632.)

Lenzen's two "Treating Physician Data Sheets" are dated January 28, 2010 and May 5, 2010. (R. 656, 689.) The first was recorded during a low point in plaintiff's condition, though Lenzen noted over the following two months that plaintiff's condition improved markedly with medication, returning to roughly the same baseline as a year before. (R. 659, 665, 667, 671.) The May 5, 2010 data sheet was based on an examination conducted after the hearing before the Law Judge. (R. 693-695.) Though Lenzen indicated that plaintiff's spirometry results were 36% and 42% of the predicted $FEV_1$ and FVC rates, respectively, neither Lenzen's treatment notes nor the test results in question were included with his report, putting in question any objective basis for his opinion. (R. 691.)

Plaintiff is correct that she has been hospitalized on several occasions as a result of her impairments. However, there are no hospitalization records for the last several years, including during the relevant time period, and both Dr. Powers and Dr. Lenzen respectively noted significant hiatuses between her emergency room visits. (R. 286, 693.) Plaintiff points out that she was prescribed many medications and produced low pre-bronchodilator spirometry results. Yet, her doctors revealed that both medications and bronchodilators improved her condition, providing a substantial evidentiary basis to conclude that her condition was reversible and, therefore, not disabling. (R. 287, 470, 492, 637, 667.) Accordingly, the Law Judge's decision to accord Dr. Lenzen's opinion no significant weight is supported by substantial evidence.

Plaintiff's last argument is that the Law Judge erred by failing to include all of her limitations in his RFC. Specifically, plaintiff contends that the Law Judge did not properly account for her obesity, limitations on her exposure to pollen and cleaners, limitations on walking or standing, or her need to take unscheduled breaks to use her nebulizer in determining plaintiff's RFC. While the Law Judge must consider all relevant evidence, and the failure to do

10

so can be grounds for remand or reversal, he is not required to discuss all the evidence of record. *See DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983); *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). However, in this case the Law Judge did discuss plaintiff's obesity in rendering his RFC finding. (R. 20.) While he did not mention plaintiff's pollen allergy or exacerbations from exposure to cleaning solvents specifically, his discussion of "allergic irritants" and his finding that she was limited to exposure to dusts, fumes and gases, and the like, provided a sufficient foundation for his determination of plaintiff's RFC. (R. 19-21.) The Law Judge addressed plaintiff's claims of functional limitations, primarily from shortness of breath, and his decision to discount them also is supported by same substantial evidence in the record. (R. 20-21.) Finally, the Law Judge acknowledged plaintiff's use of a nebulizer, but as there is no evidence confirming plaintiff's allegations about the frequency and duration of its use, the Law Judge was not required to give those allegations any more weight than he gave them. (R. 19.) Accordingly, the undersigned finds that the Law Judge considered all relevant evidence in determining plaintiff's RFC, and that determination is supported by substantial evidence.

For all these reasons, it is RECOMMENDED that an Order enter GRANTING the Commissioner's motion for summary judgment, AFFIRMING the Commissioner's final decision, and DISMISSING this case from the docket of the court.

The Clerk is directed to immediately transmit the record in this case to the presiding United States District Judge. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. §

11

Case 4:11-cv-00021-JLK-BWC Document 22 Filed 04/16/12 Page 11 of 12 Pageid#: 816

636(b)(l)(C) as to factual recitations or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objection. The Clerk is directed to transmit a certified copy of this Report and Recommendation to all counsel of record.

ENTERED: /s/ *[signature]*
U.S. Magistrate Judge

April 16, 2012
Date