IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| LORI BELTON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 4:11-cv-00021 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) | By: Hon. Jackson L. Kiser           Senior United States District Judge |
| | ) | |
| Defendant. | ) | |

Before me is the Report and Recommendation ("R & R") of Hon. B. Waugh Crigler, recommending that I grant Defendant's Motion for Summary Judgment [ECF No. 19] and dismiss this case. Plaintiff filed a timely objection [*see* ECF No. 23]; Defendant did not respond. Therefore, the objection is ripe for consideration. *See* FED. R. CIV. P. 72(b)(2). I have reviewed the dual motions for summary judgment, Judge Crigler's R & R, Plaintiff's Objections, and the relevant portions of the record. For the reasons stated below, I will **OVERRULE** Plaintiff's Objections, **ADOPT** Judge Crigler's R & R, **GRANT** Defendant's Motion for Summary Judgment, and **DISMISS** this case from the active docket of the Court.

**I.     STATEMENT OF FACTS AND PROCEDURAL HISTORY**

On July 18, 2008, Plaintiff Lori A. Belton ("Plaintiff") filed concurrent applications for Social Security Disability benefits and Supplemental Security Income benefits pursuant to Title II and Title XVI of the Social Security Act, respectively. *See* 42 U.S.C. §§ 401–433, 1381–1383f; (R. 11.) In her applications, Plaintiff alleged that she was disabled as of March 15, 2003. (*Id.*) She later withdrew the Title II portion of her disability claim and amended her alleged onset date to July 18, 2008—the date of her application. (*See* R. 13.) Plaintiff's claims were denied initially on April 28, 2009, and upon reconsideration on October 16, 2009. (*See* R. 93-97,

103.) On December 16, 2009, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (R. 110.) On April 21, 2010, an ALJ held an administrative hearing to determine whether Plaintiff was under a disability within the meaning of the Social Security Act. (R. 29-57.) Plaintiff and Dr. Gerald Willis, a certified rehabilitation counselor, appeared and testified. (*See id.*) Plaintiff was represented by counsel at the hearing.

On July 2, 2010, the ALJ submitted his decision including findings of fact and conclusions of law. (R. 11-23.) The ALJ applied the five-step evaluation process as set forth in 20 C.F.R. §§ 404.1520(a) and 416.920(a). The ALJ initially found that Plaintiff had not engaged in substantial gainful activity since July 18, 2008. (R. 13.) He found that Plaintiff suffered from "respiratory disorders and an affective disorder," which are severe impairments pursuant to 20 C.F.R. §§ 404.1520(c) and 416.920(c). (R. 14.) The ALJ found that these impairments did not meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, subpart P, appendix 1. (R. 16.) In making this finding, the ALJ noted:

> Under section 3.00 for respiratory disorders, the evidence of record does not establish $FEV_1$, FVC, or arterial blood gas values equal to or less than the value specified in the tables . . . . The claimant is prescribed multiple medications for alleged respiratory symptoms, but per the treating pulmonologist she . . . does not require regular use of oxygen. She has not had frequent emergency room visits or hospitalizations during the period at issue; and both Drs. Lenzen and Ancheta reported only three to four asthma attacks in a year period. Chest x-rays have been essentially normal with clear well-expanded lungs and no report of significant abnormality; and repeated spirometries during the period at issue have shown only "moderate" obstructive lung defect.

(R. 17.) Based on the evidence, the ALJ determined that Plaintiff "has the residual functional capacity to perform light work . . . except [Plaintiff] can only occasionally climb, stoop, kneel, crouch, or crawl and should avoid concentrated exposure to wetness, humidity, and irritants such

as fumes, odors, dusts, [and] gases." (R. 19.) The ALJ found Plaintiff is capable of performing her past relevant work as a cashier, as the work "does not require the performance of work-related activities [that are] precluded by [Plaintiff's] residual functional capacity." (R. 21.)

Subsequently, Plaintiff appealed the ALJ's decision to the Appeals Council. (R. 7.) The Appeals Council found no basis in the record or in the reasons advanced on appeal to review the decision, denied review, and adopted the ALJ's decision on April 26, 2011 as the final decision of the Commissioner. (R. 1–5).

Plaintiff instituted the present civil action in this Court on May 31, 2011. (Comp. [ECF No. 3].) Thereafter, I referred this matter to Magistrate Judge B. Waugh Crigler for consideration of Plaintiff's and Commissioner's (Defendant's) dispositive motions. (Order, Oct. 24, 2011, [ECF No. 10].) On April 16, 2012, Judge Crigler issued his Report and Recommendation in which he concluded that I should grant the Commissioner's Motion for Summary Judgment, affirm the Commissioner's final decision, and dismiss this case. (R & R [ECF No. 22].)

On April 30, 2012, Plaintiff filed timely Objections to the Report and Recommendation. (Pl.'s Obj. [ECF No. 23].) Plaintiff asserts that the ALJ erred in three respects; the alleged errors are largely identical to the three arguments Plaintiff raised in her Motion for Summary Judgment.[1] (*Compare* Br. in Supp. of Pl.'s Mot. for Summ. J. [ECF No. 14], *with* Pl.'s Obj.) The Commissioner did not file a response to Plaintiff's Objection.

## II.     STANDARD OF REVIEW

Congress has limited the judicial review I may exercise over decisions of the Social Security Commissioner. I am required to uphold the decision where: (1) the Commissioner's factual findings are supported by substantial evidence; and (2) the Commissioner applied the

---

[1] *See infra* note 6.

proper legal standard. *See* 42 U.S.C. § 405(g); *Craig v. Chater,* 76 F.3d 585, 589 (4th Cir. 1996). The Fourth Circuit has long defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In other words, the substantial evidence standard is satisfied by producing more than a scintilla but less than a preponderance of the evidence. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

The Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs, and findings to determine the functional capacity of the claimant. 20 C.F.R. §§ 404.1527–404.1545; *see Shively v. Heckler*, 739 F.2d 987, 990 (4th Cir. 1984) (noting that the role of the ALJ, not the Vocational Examiner, is to determine disability). The Regulations grant the Commissioner latitude in resolving factual inconsistencies that may arise during the evaluation of the evidence. 20 C.F.R. §§ 404.1527, 416.927. Unless the decision lacks substantial evidence to support it, the ultimate determination of whether a claimant is disabled is for the ALJ and the Commissioner. *See id.* §§ 404.1527(e), 416.927(e); *Walker v. Bowen,* 834 F.2d 635, 640 (7th Cir. 1987). If the ALJ's resolution of the conflicts in the evidence is supported by substantial evidence, then I must affirm the Commissioner's final decision. *Laws*, 368 F.2d at 642. In reviewing the evidence, I must not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [my] judgment for that of the Secretary.[2]" *Mastro*, 270 F.3d at 176 (quoting *Craig*, 76 F.3d at 589).

### III. DISCUSSION

In her Objection to the R & R, Plaintiff reiterates the same arguments she made in support of her Motion for Summary Judgment. She contends the ALJ (and thus Judge Crigler)

---

[2] Or the secretary's designate, the ALJ. *See Craig*, 76 F.3d at 589 (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987).

erred in three respects: first, by concluding that she did not meet the requirements of Listing 3.02 (chronic obstructive pulmonary disease or chronic restrictive ventilator disease); second, by failing to give Plaintiff's treating pulmonologist's opinion controlling weight; and third, by failing to include all her limitations in the residual functional capacity. I will address each of these arguments in turn.

  A. <u>The ALJ did not err by concluding that Plaintiff did not meet the requirements of Listing 3.02</u>

Plaintiff's initial Objection challenges the ALJ's determination that she did not meet the requirements of Listing 3.02. As noted above, unless the ALJ's decision lacks substantial evidence to support it, the ultimate determination of whether a claimant is disabled is for the ALJ and the Commissioner. *See id.* §§ 404.1527(e), 416.927(e); *Walker v. Bowen,* 834 F.2d 635, 640 (7th Cir. 1987). If the ALJ's resolution of the conflicts in the evidence is supported by substantial evidence, then I must affirm the Commissioner's final decision. *Laws*, 368 F.2d at 642.

Plaintiff's argument that her various spirometry readings satisfy the requirements of Listing 3.02 fails for several reasons, not the least of which is Plaintiff's failure to cite correctly the applicable Regulations. As an individual with a height of 63 inches,[3] Plaintiff must present with Forced Expiration Volume—one second ($FEV_1$) of 1.15 liters or less in order to meet the requirements for chronic obstructive pulmonary disease. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 3.02(A) (2011). In her Objection, Plaintiff incorrectly argues that her $FEV_1$ must be less than or equal to 1.25.

---

[3] Plaintiff's own testimony is contradictory on this point. At various points she testified that she is 63 and 63.5 inches tall. Because the Commissioner is granted discretion to resolve inconsistencies in the Record, because Plaintiff apparently takes no issue with this determination by the ALJ or Judge Crigler, and because it is supported by substantial evidence, Plaintiff's height is 63 inches for the purposes of judicial review of the Record. Moreover, in her Objection Plaintiff adopts the 63-inch-height finding. (<u>See</u> Obj. pg. 5.)

Using the proper metric, Plaintiff is correct that some of her spirometry readings meet this qualification. For example, on April 21, 2004, Dr. Truitt reported that Plaintiff's $FEV_1$ was at 27%, or .77 liters. (R. 488.) On May 2, 2008, her best $FEV_1$ level was 1.08 liters. Yet for every instance of a spirometry reading less than or equal to 1.15 liters, Plaintiff has multiple readings above that threshold. For example:

| DATE | FEV1 (in liters) |
|---|---|
| April 20, 2009 | 1.65 |
| July 22, 2009 | 1.71 |
| August 7, 2009 | 1.38 |
| November 16, 2009 | 1.50 |
| November 30, 2009 | 1.34 |
| December 14, 2009 | 1.24 |
| January 25, 2010 | 1.22 |
| February 15, 2010 | 1.62 |
| March 1, 2010 | 1.43 |

(R. 635, 684, 680, 681, 675, 674, 669, 668, 664.)[4] Although Plaintiff is correct that the Regulations do not require that a "majority" of her spirometry readings be less than or equal to

---

[4] Unlike Plaintiff, I am using the larger of the readings before and after the use of a bronchodilator, as required by the Regulations. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 3.00E ("The reported one-second forced expiratory volume ($FEV_1$) and forced vital capacity (FVC) should represent the largest of at least three satisfactory forced expiratory maneuvers. Two of the satisfactory spirograms should be reproducible for both pre-bronchodilator tests and, if indicated, post-bronchodilator tests. A value is considered reproducible if it does not differ from the largest value by more than 5 percent or 0.1 L, whichever is greater. The highest values of the $FEV_1$ and FVC, whether from the same or different tracings, should be used to assess the severity of the respiratory impairment."). Plaintiff's counsel would be wise to tailor his arguments to the facts and controlling law, something he fails to do throughout his brief.

1.15, she is incorrect that a few readings at or below this level compel a finding of disability and that the ALJ erred in not so finding.

At best, there is great discrepancy in the evidence. For example, whereas Plaintiff would not qualify under the Regulations on April 20, 2009, when her $FEV_1$ level was 1.65 liters, she would qualify a month later, when her $FEV_1$ was at 1.10 liters. (R. 635, 632.) Two months after that, when her $FEV_1$ was 1.71, she would not qualify. (R. 684.) Clearly, there the evidence is in conflict as to whether or not Plaintiff meets the Listing. Because both positions are supported by substantial evidence, the ALJ's position must be affirmed and Plaintiff's Objection must be overruled. *See* 42 U.S.C. § 405(g); *Craig v. Chater,* 76 F.3d 585, 589 (4th Cir. 1996).[5]

The same is true of Listing 3.02(B). At a height of 63 inches, Plaintiff's Forced Vital Capacity (FVC) must be less than or equal to 1.35 liters (not 1.25 or 1.86, as she contradictorily claims in her brief). Plaintiff's own brief establishes that the great weight of the evidence supports the ALJ's conclusion. Plaintiff highlights the following results:

| DATE | FVC (in liters) |
| --- | --- |
| March 19, 2004 | 1.15 |
| May 26, 2009 | 1.61 |
| August 7, 2009 | 1.52 |
| November 30, 2009 | 1.66 |
| January 25, 2010 | 1.68 |

---

[5] Moreover, Plaintiff's argument that her $FEV_1$ levels justify a finding that she is disabled rests on spirometry readings from *before* her alleged disability onset date. At the hearing, Plaintiff "amended her alleged onset date to July 18, 2008." (R. 13.) Therefore, six of the nine test results to which Plaintiff cites in support her contention are irrelevant. (*See* Pl.'s Obj. pg. 5.) Plaintiff's reference to tests on March 14, 2003, April 14, 2003, March 19, 2004, March 22, 2004, April 21, 2004, and May 2, 2008, are misguided at best and intentionally misleading at worst.

(Pl.'s Obj pg. 6 (citing R. 573, 632, 681, 675, 669).)  Four of the five cited test results support the ALJ's conclusion because they were greater than 1.35 liters.  Moreover, the only cited test result that would support Plaintiff's claim was taken over four years before her alleged disability onset date—July 18, 2008.  (*See* R. 13.)  Such a test result is, therefore, irrelevant.  Clearly, substantial evidence supports the ALJ's determination, and the Objection must be overruled.

> B. The ALJ did not err in failing to give the opinion of Plaintiff's treating pulmonologist, Dr. Jonathan M. Lenzen, controlling weight

In evaluating medical opinions, the ALJ should consider the following non-exclusive factors:  "'(1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist.'"  *Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005)).  Courts "typically accord greater weight to the testimony of a treating physician because the treating physician has necessarily examined the applicant and has a treatment relationship with the applicant."  *Id.* (internal quotations omitted).  Nevertheless, the treating physician's opinion is not entitled to this deference if it proves inconsistent with the objective evidence or other substantial evidence in the record.  *See Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (citing *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. § 404.1527(d)(2)); *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996).  "It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians."  *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001) (citing *Jenkins v. Chater*, 76 F.3d 231, 233 (8th Cir. 1996)).  Accordingly, "[t]he ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government if they are inconsistent with the record as a whole."  *Id.* (citing *Bentley v. Shalala*, 52 F.3d 784, 786 (8th 1995)).

Plaintiff's argument that Dr. Lenzen's opinion should be given controlling weight rests in large part on the spirometry readings discussed above. She argues that "the ALJ selectively pointed to good reports whereas a review of the evidence shows that the spirometry and Dr. Lenzen's records show consistently low oxygen rate levels and FEV values." (Pl.'s Obj. pg. 7-8.) Additionally, she takes issue with the general proposition that the ALJ may disagree with a treating physician. (*See* Pl.'s Obj. pg. 8 ["Dr. Lenzen's group . . . had been treating Ms. Belton since 2003. . . . In contrast, the consultant examiners never examined Plaintiff contemporaneously with Plaintiff's exposure to irritants. They never saw her condition, never listened to her lungs as Dr. Lenzen had."].)

First and foremost, although a treating physician's opinion is typically afforded great deference, no physician's opinion is sacrosanct. *See, e.g.*, *Halloran*, 362 F.3d at 32; *Chater*, 76 F.3d at 590. Where, as here, a physician's opinion is contradicted by his own treatment records, his opinion should not carry the day.

Second, Dr. Lenzen's opinion is not consistent with the medical records and his own treatment notes. His opinion that Plaintiff has "minimal ability to stand/walk and . . . that [she] qualifies for total disability" is simply not supported by his treatment notes or Plaintiff's own statements. On Plaintiff's "Function Report—Adult," which her daughter filled out on her behalf, Plaintiff failed to indicate that her condition affects her ability to lift, stand, kneel, squat, reach, or use her hands. She said only that it affects her ability to walk, climb stairs, talk, and complete tasks. (R. 201.) Additionally, Dr. Lenzen consistently found Plaintiff's oxygen saturation to be 98% or higher, and he noted that Plaintiff's chest examinations "demonstrate normal inspection and normal symmetry with good effort." (R. 673.) He further noted, "The percussion is normal. There are a few scattered wheezes bilaterally without crackles, rhonchi, or

other adventitious or consolidated findings." (*Id.*)  He also noted the *absence* of wheezing on many occasions.  (*See, e.g.*, R. 634, 637, 665, 667, 677, 679, 683.)  Moreover, her $FEV_1$ and FVC levels were never consistent, spiking as high as 79% of the predicted value (whereas 80% is considered "normal" (*see* R. 659)).  (*See* R. 684.)  In his Treating Physician Data Sheet, Dr. Lenzen failed to offer the date and value of Plaintiff's most recent $FEV_1$ and FVC, thereby undermining his conclusion that the values were 36% and 42% of their expected values, respectively.  (*See* R. 391.)  Dr. Lenzen's opinion that Plaintiff "unequivocally qualifies for total disability in [his] professional judgment," therefore, is not supported by the evidence, and the ALJ's decision not to afford his opinion controlling weight is supported by substantial evidence.

    C. <u>The ALJ properly included all relevant considerations in determining Plaintiff's residual functional capacity</u>

Plaintiff's final Objection to the R & R is that the ALJ failed to include all of her limitations in his residual functional capacity ("RFC").  Although the ALJ must consider all relevant evidence, and although the failure to do so can be grounds for remand or reversal, he is not required to discuss all the evidence of record.  *See DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

Plaintiff's Objection here, like her two prior ones, were raised and addressed by Magistrate Judge Crigler.[6]  Plaintiff argues that "the medical evidence clearly establishes that

---

[6] Although I proceed to address Plaintiff's third Objection—as I have the first two—on the merits, I note that mere repetition of those arguments made to and rejected by Magistrate Judge Crigler is generally not sufficient to state an Objection under Federal Rule of Civil Procedure 72.  As has been stated before:

> The issues that Plaintiff raises in her general objection have already been addressed by Magistrate Judge Crigler when they were before him in Plaintiff's summary judgment brief.  Allowing a litigant to obtain *de novo* review of her entire case by merely reformatting an earlier brief as an objection "make[es] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks.  This duplication

Ms. Belton's exposure to dust, exposure to pollen, and exposure to activity all exacerbated her asthma attacks . . . [y]et the ALJ never included pollen in his RFC." (Pl.'s Obj. pg. 9.) In fact, the ALJ expressly found that Plaintiff has the RFC to perform light work, except Plaintiff "should avoid . . . exposure to . . . dusts." (R. 19.) Clearly, the ALJ did address this concern.

Plaintiff further argues that "medical records recounted a specific instance in which Plaintiff had been around cleaning solvents and she suffered an exacerbation . . . [y]et the ALJ never imposed a restriction in the RFC to not work around cleaner." (Pl.'s Obj. pg. 9.) In fact, the ALJ expressly found that Plaintiff has the RFC to perform light work, except Plaintiff "should avoid . . . exposure to . . . fumes, odors . . . ." (R. 19.) Clearly, the ALJ did address this concern.

Plaintiff argues that "the uncontroverted evidence established repeatedly that her asthma exacerbations were caused by activity. Yet the ALJ placed no restrictions on activity such as walking or standing." In fact, the ALJ expressly found that Plaintiff has the RFC to perform light work, except Plaintiff "can only occasionally climb, stoop, kneel, crouch, or crawl . . . ." (R. 19.) Clearly, the ALJ did address this concern.

Plaintiff argues that she needs to use her nebulizer "six to seven times a day . . . [y]et ironically, the ALJ denied her disability asserting that her asthma was controlled by bronchodialator treatments, but then refused to include the necessity to have additional breaks to use her bronchodialator during work to control the asthma." (Pl.'s Obj. pg. 10.) Unfortunately, the Record does not bear out the frequency and duration of treatments Plaintiff now claims. In

---

of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act."

*Veney v. Astrue*, 539 F. Supp. 2d 841, 845–46 (W.D. Va. 2008) (quoting *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991)).

her testimony, Plaintiff only stated that she uses her nebulizer "every day," and that she "take[s] it and l[ies] down." (R. 37.) As Magistrate Judge Crigler notes, "there is no evidence confirming [P]laintiff's allegations about the frequency and duration of its use," and the ALJ "was not required to give those allegations any more weight than he gave them." (R & R 11.) As I agree with Magistrate Judge Crigler on the state of the Record and the ALJ's decision, and as Plaintiff has offered nothing more to address the valid conclusion in the R & R, I find substantial evidence supports the ALJ's decision.

### IV. CONCLUSION

The ALJ's conclusion that Plaintiff did not meet the requirements of Listing 3.02 is supported by substantial evidence. The ALJ properly found that Dr. Lenzen's opinion was not supported by the evidence, and the Record bears out and substantiates his decision to deny Dr. Lenzen the typical deference that is given to a treating physician. Finally, the various facts that Plaintiff claims the ALJ did not consider clearly were considered where supported by evidence in the Record. On the whole, the ALJ's decision is supported by substantial evidence in every regard, and I will therefore **OVERRRULE** Plaintiff's Objections, **ADOPT** Judge Crigler's R & R, **GRANT** the Commissioner's Motion for Summary Judgment, and **DISMISS** this case from the active docket of this Court.

The clerk is directed to send certified copies of this Memorandum Opinion and the accompanying Order to all counsel of record and to Magistrate Judge Crigler.

Entered this 30th day of May, 2012.

s/Jackson L. Kiser
SENIOR UNITED STATES DISTRICT JUDGE